UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

JAMES A. KURZON,

    Debtor.
_____/

Case No. 6:07-bk-02063-ABB
Chapter 7

PAMELA CABANA,

    Plaintiff,
vs.

JAMES A. KURZON,

    Defendant.
_____/

Adv. Pro. No. 6:07-ap-00102-ABB

**FILED**

APR 17 2008

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

## MEMORANDUM OPINION

This matter came before the Court on the Complaint to Determine Dischargeability of Debt (Doc. No. 1) ("Complaint") filed by Pamela Cabana, the Plaintiff herein ("Plaintiff"), against James A. Kurzon, the Debtor and Defendant herein ("Debtor"), seeking to have a judgment debt deemed nondischargeable pursuant to 11 U.S.C. Section 523(a)(4). A final evidentiary hearing was held on March 12, 2008 at which the Plaintiff, her counsel, and counsel for the Debtor appeared. The Debtor did not appear. The parties were granted leave to file post-hearing briefs and each filed a closing brief (Doc. Nos. 20, 21). The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Probate Proceedings*

Doris M. Daddario ("Decedent"), a resident of Orlando County, Florida, passed away in the fall of 2003 leaving a Last Will and Testament executed by her on November 11, 1986.[1] The Will names the Debtor, the Decedent's nephew, as the substitute Executor in the event the Decedent's husband, Dominic J. Daddario, could not serve.[2]

The Will was admitted to probate on November 20, 2003 in probate proceeding In re Estate of Doris M. Daddario, File No. 48-2003-CP-002795-0, Division 1, in the Circuit of the Ninth Judicial Circuit in and for Court for Orange County, Florida, Probate Division ("Probate Court").[3] The Decedent's husband predeceased the Decedent. The Debtor was appointed the Personal Representative of the Decedent's estate on November 20, 2003.

The value of the estate assets at the commencement of the probate proceeding was at least $74,734.00. The assets included, among other things, $58,424.43 in the money market component of Orlando Federal Credit Union ("OFCU") Account No. 569690; $1,820.98 in the savings component of the OFCU account; $2,688.86 in SunTrust Bank Account No. 0675750213110; life insurance benefits of $9,375.47 from the Decedent's deceased husband's life insurance policy; various items of personal property including jewelry, clothing, and household items; and three vehicles, a 1978 Lincoln Mark V, a 1981 Mercury station wagon, and a 1993 Nissan truck.

---

[1] Plaintiff's Exh. No. 1.
[2] Id.
[3] Id.

The Plaintiff, the Decedent's niece, is the residuary beneficiary of the Will.[4] It provides the Plaintiff is to receive "all money in the bank, plus monies in" the SunTrust account, various items of jewelry, furs, clothes, furniture, home accessories, crystal, china, and silverware. The Will provides the Debtor is to receive the Decedent's home located at 3355 Monika Circle, Orlando, Florida 32806, all tools, the Lincoln, the Mercury, a Snapper tractor, and the Decedent's husband's jewelry. The Will directs the proceeds of the "Government Insurance Policy" are to be used by the Debtor for burial expenses with any remaining funds to be divided equally between the Debtor and the Plaintiff.

The Debtor did not fulfill his duties as the Personal Representative. He filed an initial Inventory, signed by him under penalties of perjury on May 8, 2004, containing numerous material misstatements, including the omission and undervaluing of assets.[5] He listed the OFCU money market account as having a balance of $50,000.00 when the actual balance was $58,424.43 and he omitted the OFCU savings account with its balance of $1,820.98.[6] He listed the SunTrust account as having a zero balance when it had a balance of $2,688.86. He omitted the life insurance proceeds and the vehicles.

The Debtor comingled estate assets with his personal assets and used estate assets to pay personal expenses. He drew the OFCU account down to a zero balance and closed the account on December 8, 2003 through check number 0106089 in the amount of $60,317.55 issued to "James A. Kurzon Executor of Estate for Doris M Daddario and Dominic J Daddario Jr."[7] The funds of $60,317.55 constituted property of the probate

---

[4] Id. at p. 2.
[5] Plaintiff's Exh. No. 3.
[6] Plaintiff's Exh. No. 2.
[7] Id.

estate. The Debtor did not open a separate account for the estate funds, but deposited the funds on December 8, 2003 into OFCU Account No. 614100, which account was held solely in his name "James Alfred Kurzon."[8] He drew Account No. 614100 down to $1,217.96 through a series of withdrawals made between December 31, 2003 and September 30, 2006 and then closed the account with a zero balance on April 9, 2007.[9]

The Debtor filed on December 20, 2005 a Final Accounting of Personal Representative for the period May 8, 2004 through December 20, 2005 certifying:

> . . . the attached Schedules are true, to the best of my knowledge and belief, and that it is a complete report of all cash and property transactions and of all receipt and disbursement by me as personal representative of the estate of DORIS M. DADDARIO, deceased, from May 8, 2004, through December 20, 2005.[10]

The Final Accounting has no supporting documentation and contains numerous material misstatements and omissions. The starting balance undervalued the estate assets (*i.e.*, the SunTrust funds, life insurance benefits, and Nissan truck were not accounted for and the majority of the OFCU funds were not accounted for). He disclosed in Schedule C two vehicles, the Lincoln and the Mercury, had been distributed, but provided no values for the vehicles or to whom they had been distributed. Cash distributions of only $3,970.08 were disclosed in Schedule B and C despite the fact the Debtor had distributed $60,317.55 to himself from the OFCU account on December 8, 2003.

The Debtor listed the total cash value of "Assets on Hand at Close of Accounting Period" as $45,513.53 in Schedule E, but that disclosure is false and inflated. No

---

[8] Id.

[9] Id. The withdrawals include $9,000.00 on December 8, 2003; $5,000.00 on January 5, 2004; $779.00 on November 30, 2004; $4,000.00 on November 18, 2005; $3,000.00 on January 20, 2006; $3,000.00 on February 17, 2006; $25,284.49 on June 20, 2006; $10,284.49 on July 20, 2006; and $9,500.00 on July 20, 2006. The Debtor deposited $16,500.00 into the account on December 27, 2006 and then drew the account down to a zero balance with a $17,779.38 withdrawal on April 9, 2007.

[10] Plaintiff's Exh. No. 4.

accounting was made of what happened to the SunTrust funds or the life insurance proceeds. The OFCU funds were not "on hand" at the close of the accounting period, but had been transferred to the Debtor's personal bank account and substantially drawn down by him.

The balance of the funds in the Debtor's OFCU account on December 20, 2005 was $41,606.94, not $45,513.53.[11] He made a $4,000.00 withdrawal on November 18, 2005 bringing the account balance from $45,513.53 on October 1, 2005 to $41,606.94 on December 20, 2005.[12] He made no disclosure or accounting of the withdrawals from his personal account. His account was generating dividend deposits on the funds totaling $1,136.11, which constituted estate income. He at no time disclosed such income.

The Plaintiff's objections to the Debtor's accountings were sustained by the Probate Court by Order entered on May 31, 2006.[13] The Debtor filed on June 19, 2006 his First Amended Accounting of Personal Representative for the period May 8, 2004 through June 19, 2006 certifying:

> . . . the attached Schedules are true, to the best of my knowledge and belief, and that it is a complete report of all cash and property transactions and of all receipt and disbursement by me as personal representative of the estate of DORIS M. DADDARIO, deceased, from May 8, 2004, through June 19, 2006.[14]

The Amended Accounting contains materially false and inaccurate disclosures. The starting balance of the estate's assets is undervalued and assets are omitted. The Debtor continued to conceal the transfer of the OFCU funds into his personal account.

---

[11] Plaintiff's Exh. No. 2.
[12] Dividend deposits of $48.35 and $45.06 were made on the account balances on October 31, 2005 and November 30, 2005.
[13] Plaintiff's Exh. No. 5.
[14] Plaintiff's Exh. No. 6.

Cash funds of $4,100.00 were withdrawn from the SunTrust account with no supporting documentation evidencing the funds were used for estate purposes.

The Debtor disclosed withdrawals of $9,900.00 and $5,000.00 of estate funds from his personal account, but provided no documentation establishing the funds were used for estate purposes as he asserted. He made no disclosure of the withdrawal of $779.00 of estate funds from his personal account and described the withdrawals of $4,000.00, $3,000.00, and $3,000.00 as "net losses" for repayment of "loans" and "advances" to himself. No documentation was presented supporting such statements.

The Debtor never repaid the "loans" and "advances." Schedule D should have reflected a net loss total of $10,000.00, but has a final total of "0.00." The Debtor manufactured a zero balance in Schedule D by creating line items for his alleged intent to repay the "loans" and "advances," so that Schedule D contains an illusory inflow of $10,000.00 to counterbalance his withdrawals of $10,00.00.[15]

The Debtor disclosed for the first time in the Amended Accounting in Schedule A he received a check for $9,375.47 from the Department of Veterans Affairs for Policy No. J201 on December 31, 2003. These funds were not deposited into a bank account for the benefit of the estate, but appear to have been commingled with the Debtor's personal assets and generally used by him for his personal benefit.

He disclosed for the first time the existence of the 1993 Nissan Truck in the Amended Accounting listing it in Schedule C as a distribution, apparently to himself, stating "James Kurzon desires it be conveyed to him as part of his personal representative commission."

---

[15] The Debtor uses the abbreviation "TBD" for the repayment line items, which apparently is short for "To Be Done."

The Amended Accounting reveals estate funds from the SunTrust and OFCU accounts were paid to Marc-James Construction, LLC, which is owned by the Debtor.[16] The Debtor maintained personal and business accounts at SunTrust and commingled estate funds with his personal and business accounts.

The Debtor, on June 20, 2006—the day following the close of the Amended Accounting reporting period—withdrew $25,284.49 of estate funds from his personal OFCU account. He made no disclosure of the June 20, 2006 withdrawal or of the subsequent withdrawals from his OFCU that brought the estate funds to a zero balance.

The Plaintiff objected to the Amended Account. The Plaintiff and the Debtor entered into an agreement to resolve the probate administration issues whereby: (i) the Debtor was to resign as the Personal Representative; (ii) the Plaintiff would become the successor Personal Representative; and (iii) the Plaintiff would accept a final distribution of $60,000.00 from the estate to be paid by November 8, 2006.[17]

The Debtor failed to comply with the agreement and the Plaintiff filed an Emergency Petition to Remove Personal Representative Pursuant to Settlement. The Probate Court held a hearing on December 13, 2006 at which the Plaintiff appeared. The Debtor did not appear and his counsel of record had been allowed to withdraw.

The Probate Court entered the Order Granting Emergency Petition to Remove Personal Representative and Final Judgment on December 18, 2006 ("Judgment") granting relief to the Plaintiff. The Probate Court found the hearing was properly noticed and the Debtor failed to comply with the parties' agreement: "A distribution in the

---

[16] Plaintiff's Exh. No. 6; Main Case Doc. No. 1 (Schedule I, Statement of Financial Affairs).
[17] Plaintiff's Exh. No. 7.

7

amount of $60,000.00 was to be made to Ms. Cabana on November 8, 2006, but no distribution was made to her at that time."[18] The Probate Court ordered:

1. Mr. Kurzon's informal request to the Court to postpone the hearing is denied.

2. Mr. Kurzon is found to be in breach of the settlement agreement with Ms. Cabana.

3. Mr. James A. Kurzon is removed as Personal Representative of the Estate of Doris Daddario and is directed to turn over all estate assets and records in his control to Pamela Cabana.

4. Pamela Cabana shall be appointed as Successor Personal Representative and will be issued Letters of Administration upon the filing of her oath and designation of resident agent.

5. Pamela Cabana shall recover from James A. Kurzon the sum of $60,000.00 plus interest at the legal rate from the date of this judgment for which let execution issue.[19]

The money judgment plus accruing interest entered by the Probate Court shall hereinafter be referred to as the "Judgment Debt."

The Probate Court issued Amended Letters of Administration and the Plaintiff was appointed the successor Personal Representative on February 28, 2007. She soon discovered all funds in the SunTrust and OFCU accounts had been withdrawn by the Debtor and placed in his personal accounts and he had commingled estate assets with his personal assets. No estate assets remained. The Plaintiff initiated collection actions against the Debtor. He has not paid any portion of the Judgment Debt.

*Bankruptcy Proceedings*

The Debtor filed for bankruptcy protection on May 21, 2007. He listed the Decedent and the Plaintiff as creditors in Schedule F with a claim of an "unknown"

---

[18] Plaintiff's Exh. No. 7, p. 2.
[19] Id.

amount with no description of how and when the claim arose. He listed total unsecured debt of $11,550.26. The Plaintiff appears to be his largest creditor. He listed total cash and SunTrust Personal Checking assets of $288.69 in Schedule B.

The Plaintiff instituted this adversary proceeding against the Debtor seeking to have the Judgment Debt deemed nondischargeable for the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The parties stipulated the Debtor was a fiduciary as the Personal Representative of the Decedent's estate and was removed as the Personal Representative by the Probate Court.

The Plaintiff contends the Judgment is entitled to preclusive effect as to the amount of probate assets that should be available for distribution to the Plaintiff, $60,000.00, and those funds were converted by the Debtor for his own use or benefit. The Debtor disputes the Judgment is entitled to preclusive effect for nondischargeability purposes because the Judgment makes no findings of defalcation or fraud by the Debtor.

The Debtor, as the Personal Representative of the Decedent's probate estate, was a fiduciary and was obligated to observe the standards of care applicable to trustees pursuant to Florida State statutory law. His statutory duties as the Personal Representative included settling and distributing the estate of the Decedent in accordance with the terms of the Will and the Florida Probate Code as expeditiously and efficiently as is consistent with the best interests of the estate. The Debtor did not observe the governing standards of care and breached his duties. He committed defalcation as the Personal Representative.

The Probate Court found the Plaintiff was entitled to a distribution of $60,000.00 and the Debtor breached his duty to expeditiously distribute the estate assets to her: "A

distribution in the amount of $60,000.00 was to be made to Ms. Cabana on November 8, 2006, but no distribution was made to her at that time."[20] The Probate Court found sufficient cause to remove the Debtor as the Personal Representative.

Failure to distribute estate assets to a beneficiary entitled to such distribution constitutes a defalcation of fiduciary duty pursuant to Florida statutory and controlling case law. The Judgment implicitly establishes the Debtor, by failing to expeditiously make distribution to the Plaintiff, committed a defalcation of his fiduciary duty. He, as a result, was removed as the Personal Representative.

The Judgment is a final order on the merits entered by a court of competent jurisdiction. The parties to the Judgment and this adversary proceeding are identical and both matters involve the same causes of action, specifically, defalcation by the Debtor as a fiduciary of the Decedent's estate. The Judgment is entitled to preclusive effect pursuant to the doctrines of res judicata and collateral estoppel. The Debtor is barred from challenging the Judgment. The Plaintiff has established the Judgment Debt is nondischargeable.

The Plaintiff's evidence, exclusive of the Judgment, independently establishes the elements of nondischargeability. It establishes the Debtor did not act in the best interests of the estate, but diverted estate assets for his own use and benefit. He diverted all of the cash assets of the estate to his personal accounts, without the knowledge or the consent of the estate beneficiaries, and dissipated the funds for his own personal benefit. He concealed such diversion and dissipation through materially false and fraudulent accountings filed with the Probate Court. He omitted assets from his accountings. He failed to settle the estate and distribute the assets to the estate's beneficiaries and

---

[20] Plaintiff's Exh. No. 7.

claimants. He engaged in improper conduct throughout the entirety of his tenure as Personal Representative.

Each instance of improper conduct constitutes a defalcation of the Debtor's fiduciary duty. The Judgment Debt is nondischargeable.

## **CONCLUSIONS OF LAW**

The Plaintiff challenges the dischargeability of the Judgment Debt pursuant to 11 U.S.C. Section 524(a)(4), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> ...
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4) (2007). The Plaintiff has the burden of establishing an exception to discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005 (2007). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

The Plaintiff did not establish the elements of embezzlement or larceny for Section 523(a)(4) purposes.

The Plaintiff, to prevail on its 11 U.S.C. Section 523(a)(4) fraud or defalcation nondischargeability count, must establish by a preponderance of the evidence: (i) the Debtor was acting in a fiduciary capacity; and (ii) while acting in a fiduciary capacity, he committed fraud or defalcation. In re Goodwin, 355 B.R. 337, 343 (Bankr. M.D. Fla. 2006). The fiduciary relationship must exist at the time the act creating the debt was

committed. Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 817 (11th Cir. 2006)

State statutory law may control whether a fiduciary relationship existed. In re Valdes, 98 B.R. 78, 80 (Bankr. M.D. Fla. 1989). Florida Statute Section 733.602(1) sets forth "a personal representative is a fiduciary . . . ." The Debtor as the Personal Representative of the Decedent's estate was a fiduciary pursuant to Florida Statute 733.602(1). He was a fiduciary from the date of his appointment through the date of his removal.

The term "defalcation" as applicable to Section 523(a)(4) actions has not been precisely defined, but the Eleventh Circuit Court of Appeals has held "'[d]efalcation' refers to a failure to produce funds entrusted to a fiduciary." Quaif v. Johnson, 4 F.3d 950, 955 (11th Cir. 1993); *see also* In re Fernandez-Rocha, 451 F.3d at 817 (adopting and applying the Quaif definition of "defalcation."). A "'defalcation' for purposes of [Section 523(a)(4)] does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" Quaif, 4 F.3d at 955 (adopting Judge Learned Hand's description of "defalcation.") "'[D]efalcation is a more encompassing term than fraud and does not require intent as is the case with proving fraud." In re Valdes, 98 B.R. 78, 80 (Bankr. M.D. Fla. 1989).

The Florida Probate Code placed affirmative duties on the Debtor as the Personal Representative. The Debtor, as a fiduciary, was required to "observe the standards of care applicable to trustees as described by s. 737.302" and was:

> under a duty to settle and distribute the estate of the decedent in accordance with the terms of the decedent's will and this code as expeditiously and efficiently as is consistent with the best interests of the estate. A personal representative shall use the authority conferred by this code, the authority in the will, if any, and the authority of any order of the court, for the best interest of interested persons, including creditors.

Fla. Stat. § 733.602(1).[21] He was required to "take all steps reasonably necessary for the management, protection, and preservation of the estate . . . ." Fla. Stat. § 733.607(1). A personal representative is liable for his breaches of fiduciary duty:

> A personal representative's fiduciary duty is the same as the fiduciary duty of a trustee of an express trust, and a personal representative is liable to interested persons for damage or loss resulting from the breach of this duty.

Fla. Stat. § 733.609(1). No provision of the Probate Code indicates a personal representative may use estate assets as his own.

The Debtor was obligated to expeditiously and efficiently settle and distribute the estate of the Decedent in accordance with the terms of the Will pursuant to Florida Statute Section 733.602(1). He was obligated to manage, protect, and preserve the estate pursuant to Florida Statute Section 733.607(1). He did not have an individual right of possession to any of the estate's assets. Fla. Stat. § 733.608(1)[22]; State of Fla. v. Lahurd, 632 So.2d 1101, 1103-1104 (Fla. 4th DCA 1994). "The estate assets are not the personal representative's property, but are held by the personal representative for the benefit of the estate and ultimately for distribution to the beneficiaries." Id. at 1103.

---

[21] Section 737.302 was repealed effective July 1, 2007 and 733.602 was amended to refer to "part VII of chapter 736." The pre-amendment, pre-repeal statutory provisions are applicable given the Decedent's probate proceeding was commenced in 2003.

[22] Section 733.608 titled "General power of the personal representative" provides in subsection (1): "All real and personal property of the decedent, except the protected homestead, within this state and the rents, income, issues, and profits from it shall be assets in the hands of the personal representative."

13

The Plaintiff contends the Judgment Debt is nondischargeable pursuant to the Judgment and it is entitled to preclusive effect. Res judicata bars relitigation of matters decided in a prior proceeding if: (i) the prior decision was rendered by a court of competent jurisdiction; (ii) there was a final judgment on the merits; (iii) the parties were identical in both suits; and (iv) the prior and present causes of action are the same. Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990).

"A final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). "'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir. 2004). Collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding. Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998).

The Debtor was obligated to make distribution expeditiously to the Plaintiff, who was a beneficiary of the Will, pursuant to Florida Statute Section 733.602(1). The Probate Court found the Debtor failed to make distribution of $60,000.00 to the Plaintiff. He was removed as the Personal Representative as a result of such failing. His failure to make distribution to the Plaintiff of funds that were entrusted to him as the Personal Representative constitutes a defalcation of fiduciary duty. Fla. Stat. §§ 733.602(1), 733.608(1)(c), 733.609(1); Quaif, 4 F.3d at 955.

The Judgment is a final judgment on the merits rendered by a court of competent jurisdiction. The Judgment litigation and this adversary proceeding involve the same

operative facts and the same parties. The Judgment issued by the Probate Court is binding in this proceeding pursuant to the doctrines of res judicata and collateral estoppel. The Judgment is entitled to preclusive effect and the Debtor is barred from challenging it. The Plaintiff has established the Judgment Debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4).

The Plaintiff's documentary evidence, independently of the Judgment, establishes the Judgment Debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4). The Debtor did not act in the best interests of the estate. He was required to keep the estate funds separate from his personal and business funds. Fla. Stat. § 733.602(1); Lahurd, 632 So.2d at 1104. He diverted all of the cash assets of the estate to his personal and business accounts, without the knowledge or the consent of the estate beneficiaries, and dissipated the funds for his own personal benefit. Such actions constitute defalcations of his fiduciary duty.

The Debtor concealed such diversion and dissipation through materially false and fraudulent accountings filed with the Probate Court. He failed to settle the estate and distribute the assets to the estate's beneficiaries and claimants. The Judgment Debt results from his improper conduct. The Judgment Debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4). In re Valdes, 98 B.R. at 80.

A separate judgment in favor of the Plaintiff and against the Debtor consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 17th day of April, 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

15